978 P.2d 814

**John S. CARROLL, Plaintiff/Cross–Defendant–Appellant–Petitioner,**

v.

**Marcia E. NAGATORI–CARROLL, nka Marcia E. Murakami, Defendant/Cross–Plaintiff–Appellee–Respondent.**

No. 20990.

Supreme Court of Hawai'i.

May 20, 1999.

---

Carl H. Osaki (of Kawachika & Osaki), Honolulu, for petitioner on the writ and supplemental brief.

William C. Darrah, Honolulu, for respondent on the answer and supplemental brief.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by MOON, C.J.

Plaintiff / cross - defendant - appellant - petitioner John Carroll (Carroll or Husband) appealed from the family court's denial of a motion for post-decree relief. The Intermediate Court of Appeals (ICA) considered the matter and filed its memorandum opinion on January 2, 1999. *See Carroll v. Nagatori-Carroll,* No. 20990, —— Hawai'i ——, —— P.2d —— (App. Jan. 12, 1999) (mem.). On February 12, 1999, Carroll filed his application for writ of certiorari, wherein he requested this court to reverse only that portion of the ICA's decision involving "the issue

of an award of [his Hawaiian Aviation Contract Services, Inc., (HACS)] stock to Respondent-Wife."

We granted certiorari on February 19, 1999 and ordered the parties to provide supplemental briefing on the following issue:

Whether the family court erred in awarding the one-half interest in Hawaiian Aviation Contract Services, Inc. (HACS stock) to Wife *prior* to making a determination of (a) the amounts, if any, that she was entitled to receive under paragraph 10 of the Agreement in Contemplation of Divorce and (b) the value of one-half of [Carroll's] interest in the HACS stock.

Carroll and his ex-wife, defendant/cross-plaintiff-appellee-respondent Marcia Nagatori–Carroll [hereinafter, ex-wife or Wife], filed supplemental briefs with the court on March 22, 1999. In particular, Carroll argues that the ICA erred in allowing the family court to prematurely award ex-wife half of his interest in stock that he owned before making a determination whether she was entitled to any amounts under the Divorce Decree. Ex-wife counters that the ICA correctly affirmed the decision of the family court to award her half of Carroll's interest in HACS and, moreover, the concerns signaled by this court's order for supplemental briefing will necessarily be addressed by the family court on remand, pursuant to the ICA's memorandum opinion and remand order.

For the following reasons, we agree with ex-wife, affirm the decision of the ICA, and issue this opinion to clarify that post-decree sanctions do not necessarily constitute a "re-division" of the marital property awarded pursuant to a divorce decree.

## I. BACKGROUND

■ The following procedural and factual history is taken from the record, the ICA's memorandum opinion, and the parties' briefs. Carroll and ex-wife were married on November 24, 1979. The parties executed an Agreement in Contemplation of Divorce

(AICD) on August 20, 1992, which merged into the Divorce Decree filed on September 23, 1992.[1]

The Divorce Decree included various provisions for the enforcement of Carroll's property division and other obligations. Among his obligations, the Divorce Decree required Carroll to pay premiums on life insurance policies and to make mortgage payments on the marital residence. Additionally, the Divorce Decree provided for the enforcement of these provisions in the event Carroll declared bankruptcy. Specifically, the Divorce Decree provided in pertinent part:

(10) *DEBT . . . If Husband becomes bankrupt* and in doing so deprives Wife of property or benefits conferred hereunder, *Husband shall pay Wife such amounts as are necessary to put Wife in a position as favorable as she would have otherwise enjoyed* under the terms of this Agreement. Said payment shall be *in such form, including alimony, as Wife shall elect,* and if elected as alimony shall not be subject to the alimony waiver provisions included in Section (4) of this Agreement.

(Emphases added.)

Following the parties' divorce, Carroll repeatedly failed to comply with the terms of the Divorce Decree in several respects. Additionally, on March 29, 1994, Carroll commenced Chapter 11 bankruptcy proceedings which were subsequently converted into a Chapter 7 bankruptcy proceeding. On January 24, 1995, ex-wife commenced Adversary Proceeding No. 95–0005 in Carroll's bankruptcy case, seeking a determination that Carroll's obligations to ex-wife under the Divorce Decree were nondischargeable in bankruptcy. As described by the Bankruptcy Court in a September 25, 1996 order, Carroll failed to comply with the Divorce Decree in the following relevant respects:

### FINDINGS OF FACT

. . . .

---

1. We note that, although the parties refer to the AICD in their briefs, the AICD lost its separate existence when that agreement was merged into the Divorce Decree. *See Stouffer v. Stouffer,* 10 Haw.App. 267, 277, 867 P.2d 226, 230–31 (1994). Thus, for the remainder of this opinion, where possible, we refer to the Divorce Decree rather than the AICD.

6. [Carroll] failed to pay the premiums on the Executive Life policy. That policy was canceled. The record does not disclose the present status of the Transamerica policy, for the benefit of the children.

7. Before Bankruptcy, [Carroll] failed to make the marital residence mortgage payments required under the [AICD]. The lender, First Hawaiian Bank, commenced foreclosure proceedings.

8. Because of [Carroll's] defaults, [ex-wife] foreclosed her mortgage against [Carroll's] real property. The foreclosure proceeds received by [ex-wife] totaled $168,942.76, which [ex-wife] used to clear the arrearages on the mortgage on the marital residence.

9. [Carroll's] failure to make mortgage payments on the marital residence continued. Because [ex-wife's] income was insufficient to enable her to remain current with mortgage payments to First Hawaiian Bank, [ex-wife] was forced to sell the marital residence.

. . . .

11. The net proceeds received by [ex-wife] from the sale of the marital residence and from the foreclosure sale of [Carroll's] property were less than the capital gains taxes resulting from the sale of the marital residence.

12. On April 11, 1996, [ex-wife's] counsel wrote a letter to [Carroll's] counsel which stated that "[t]o the extent that it is decided by the bankruptcy court that [ex-wife] must elect to impose an alimony obligation on [Carroll] in lieu of the property and benefits in order to preserve and protect them against [Carroll's] bankruptcy, [ex-wife], shall, and does hereby, make said election."

The Bankruptcy Court also entered the following relevant conclusions of law:

1. Bankruptcy Code Section 523(a)(5) provides in relevant part that "*a discharge under [the Code] ... does not discharge* an individual debtor from any debt ... to a spouse[ or] former spouse ... for *alimony to, maintenance for, or support of such spouse ... in connection with a separa-* tion agreement[ or] divorce decree ...." 11 U.S.C. § 523(a)(5)(1986).

. . . .

3. To determine whether an obligation in divorce is in the nature of alimony, maintenance, and support, "*the court must look beyond the language of the decree and to the intent of the parties and to the substance of the obligation.*" [*In re Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984) (emphasis added) ].

4. Where circumstances indicate that support of the recipient spouse is necessary, *a purported property settlement may be construed as maintenance and support.* *Id.*

5. The *primary factors* to be considered in determining whether support of the spouse is necessary include *whether there is an imbalance in the income of the parties, whether the payments are paid directly to the spouse and made in installments over a long period of time,* In re Sternberg, 85 F.3d 1400, 1405 (9th Cir. 1996), and whether the couple has minor children. *In re Gionis*, 170 B.R. 675, 682 (Bankr.9th Cir.1994).

6. *These factors are analyzed according to the facts and circumstances at the time the divorce decree was entered.* In re Sternberg, 85 F.3d at 1405.

7. Given the income disparity between [ex-wife] and [Carroll] at the time of the divorce, the award of custody of two minor children to [ex-wife], the award of the marital residence to [ex-wife], *the agreement by [Carroll] to make mortgage payments on the marital residence, and the agreement by [Carroll] to maintain life insurance policies for the benefit of [ex-wife] and the children, and [Carroll's] obligation to make child support payments, it is clear that the obligations of [Carroll] under the [AICD] are in the nature of alimony and support, and are not dischargeable in bankruptcy.*

. . . .

9. [Ex-wife] made the alimony election pursuant to Paragraph 10 of [the AICD] on January 24, 1995, when she filed the complaint to determine dischargeability of

debt, and when she made the election by letter dated April 11, 1996.

10. [Ex-wife], having made the election, is entitled to seek prospective and retrospective alimony from [Carroll] in the Family Court.

11. Judgment for [ex-wife] shall be entered, and any sums awarded to her pursuant to the Divorce Decree and [AICD] by the Family Court are and shall be nondischargeable in bankruptcy.

(Footnote omitted.) (Emphases added.)

Following the Bankruptcy Court's ruling, ex-wife again filed motions for post-decree relief in the family court. The family court conducted Hearings on December 24 and 26, 1996. Although the family court granted most of the relief sought by ex-wife, only some of its orders are relevant to the instant application for certiorari. Specifically, on February 4, 1997, the family court entered an order [hereinafter, February 4, 1997 Order] stating in relevant part:

22. [Ex-wife's] request for alimony and other orders against [Carroll] to compensate [ex-wife] on account of the property and benefits which [ex-wife] has lost as a consequence of [Carroll's] failure to comply with his obligations under the [AICD], as incorporated in the [Divorce] Decree, and [Carroll's] bankruptcy, and the damages [ex-wife] has suffered as a result thereof, shall be, and is hereby, granted.

As partial compensation for ex-wife's losses, the family court also issued the following order that is at the heart of the present dispute:

(a) [Carroll] shall assign to [ex-wife], and [ex-wife] shall be awarded, one-half of [Carroll's] interest in Hawaiian Aviation Contract Services, Inc.

With respect to this part of the family court's order, the ICA noted that "[t]he record does not reveal the basis for the family court's implicit finding that the net market value of one-half of [Carroll's] interest in [HACS] was less than the net market value 'of the proper-

ty and benefits which [ex-wife] has lost[.]' " *Carroll*, mem. op. at 10 n. 1.

Although the family court's February 4, 1997 Order awarded ex-wife half of Carroll's interest in the HACS stock, the family court, on February 12, 1997, also issued an injunction preventing ex-wife from doing "anything with those shares for a period of six months" and further ordered that the shares "be held in abeyance without the transfer for six months" [hereinafter, February 12, 1997, Order]. Carroll did not appeal either the February 4 or February 12, 1997, Orders.

On February 12, 1997, ex-wife remarried.[2]

On June 20, 1997, Carroll filed a Motion and Affidavit for Post–Decree Relief, followed by an amended motion on July 9, 1997, citing Hawai'i Family Court Rules (HFCR) Rules 7(b) (application for an order) and 60(b) (relief from decree or order). The family court held hearings on the amended motion on August 1 and 8, 1997, and orally issued a ruling on August 8, 1997, denying Carroll's motion. On August 28, 1997, Carroll filed a motion for reconsideration of the August 8 ruling. On September 10, 1997, the family court filed its written decision, entitled "First Order Re: Plaintiff's Motion on Reserved Issues Filed June 20, 1997 and Plaintiff's Amended Motion and Affidavit for Post–Decree Relief Filed July 9, 1997," [hereinafter, September 10, 1997 Order]. The order stated, among other things, that "[t]he extent of [ex-wife's] damages suffered as a consequence of [Carroll's] failure to comply with his obligations under … the Divorce Decree filed September 23, 1992, has not yet been determined." Accordingly, the family court (1) continued to hold in abeyance the transfer of HACS shares for another ninety days, and (2) ordered a trial to determine the actual and full extent of the damages suffered by ex-wife as a consequence of Carroll's failure to comply with the AICD and Decree.

On September 16, 1997, the family court scheduled a trial to determine the extent of

2. The ICA held that, from the date of her remarriage on February 12, 1997, ex-wife would not be able to receive *prospective* alimony from Carroll. *See Carroll*, mem. op. at 19 ("We agree that HRS § 580–51(a) deprives the family court of the dis-

cretion to enforce that part of its Divorce Decree pertaining to alimony coming due after [ex-wife] remarried.… [That fact does not, however] alter the amount [that came] due [prior to her remarriage] or [Carroll's] legal obligation to pay it.").

ex-wife's damages, and contested proceedings were conducted on October 7, 1997. Thereafter, the family court ordered each party to submit proposed findings of fact and conclusions of law. The parties submitted their respective proposals on October 31, 1997. A decision was still pending as of the filing of Carroll's February 12, 1999 application for writ of certiorari.

## II. *STANDARD OF REVIEW*

 "We have previously held that the 'family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion.'" *In re Jane Doe, Born May 22, 1976,* 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996) (citing *In re Jane Doe,* 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994)).

Under [the abuse of discretion] standard of review, the appellate court is not authorized to disturb the family court's decision unless (1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason.

*Wong v. Wong,* 87 Hawai'i 475, 486 960 P.2d 145, 156 (App.1998) (brackets in original) (quoting *Bennett v. Bennett,* 8 Haw.App. 415, 426, 807 P.2d 597, 603 (1991)).

## III. *DISCUSSION*

Although a number of issues were appealed to the ICA, the only issue relevant to the instant application is whether the ICA erred in affirming the family court's award of half of Carroll's interest in HACS to ex-wife. Carroll argues that the family court: (1) lacked jurisdiction to order the transfer of stock, insofar as it constituted a redivision of property under the Divorce Decree; and (2) exceeded its authority in ordering the trans-

fer of stock prior to determining the full extent of ex-wife's damages or the value of the HACS stock. We disagree.

A. *The Family Court Possessed Jurisdiction to Enforce the Agreement of the Parties.*

As an initial matter, we note that the ICA characterized the family court's order requiring the stock transfer as an order that was "entered because [Carroll] failed to pay the liquidated and unliquidated amounts of money [Carroll] owed to [ex-wife] pursuant to family court's orders." *Carroll,* mem. op. at 15. Thus, according to the ICA, the family court was only taking steps necessary to enforce the Divorce Decree. *See id.* at 16–17.

Carroll argues, by contrast, that the family court's award of the HACS stock constituted a division of property, which the family court lacked jurisdiction to order. Relying on Hawai'i Revised Statutes (HRS) §§ 580–56(a) and (d) (1993),[3] Carroll contends that "the Family Court was totally without jurisdiction to take away [his] property more than four years after the entry of the divorce decree." We agree with the ICA and reject Carroll's jurisdictional argument.

 In the present case, Paragraph 10 of the AICD, which was incorporated into the Divorce Decree, specifically provides that:

If [Carroll] becomes bankrupt and in doing so deprives [ex-wife] of property or benefits conferred hereunder, [Carroll] shall pay [ex-wife] such amounts as are necessary to put [ex-wife] in a position as favorable as she would have otherwise enjoyed under the terms of this Agreement. Said payment shall be in such form, including alimony, as [ex-wife] shall elect....

Such an agreement is not self-executing. Not only does it allow for the ex-wife to

---

**3.** HRS § 580–56(a) provides that:

Every decree of divorce which does not specifically recite that the final division of the property of the parties is reserved for further hearing, decision, and orders shall finally divide the property of the parties to such action.

Subsection (d) provides that:

Following the entry of a decree of divorce, ... or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.

make an election as to the form of payments that Carroll must make, but such a clause necessarily authorizes further family court intervention to enforce it—especially where, as here, the husband has failed repeatedly to comply with his obligations under the Divorce Decree.

More fundamentally, it is doubtful whether HRS § 580–56 is even implicated here because the payments Carroll was required to make under the Divorce Decree were not necessarily part of a "property division" as he contends. "In determining whether an award is a division of property or spousal support, the label given it in the decree is not conclusive." *In re Marriage of Ash,* 61 Or.App. 595, 658 P.2d 540, 541 (1983); *see also In re Marriage of Moak,* 64 Or.App. 487, 668 P.2d 1249, 1251 (1983) (labels used by the parties to describe "property division" or "spousal support" are not decisive). Looking at the substance of the Divorce Decree in the present case, the amounts that Carroll owed ex-wife do not easily fit within any traditional description of "property division."

> As the Bankruptcy Court acknowledged, [given] . . . the agreement by [Carroll] to make mortgage payments on the marital residence, and the agreement by [Carroll] to maintain life insurance policies for the benefit of [ex-wife] and the children, . . . it is clear that the obligations of [Carroll] under the [AICD] are in the nature of alimony and support, and are not dischargeable in bankruptcy.

Although we need not decide, as an initial matter, whether or not the nature of Carroll's obligations were ever properly characterized as a "property division" for purposes of HRS § 580–56, we agree with the ICA that *the family court's order* awarding ex-wife the one-half interest in HACS was "not a division of property," but instead "the enforcement of the family court's decree." *Carroll,* mem. op. at 16–17.

The ICA's characterization is reinforced by the family court's statement, at the December 26, 1996 hearing, that, "[s]o, for the purposes of alimony, I know that [Carroll] and his income set up doesn't look like he has the money to pay the—any type of alimony

at the present time. So, the Court orders that one half of [Carroll's] interest in HACS be assigned to [ex-wife]. *Carroll,* mem. op. at 8 (some brackets in original). Viewed in context, therefore, the family court was simply trying to satisfy Carroll's outstanding debt to his ex-wife and enforce the terms of the Divorce Decree. Accordingly, HRS § 580–56 has no application to the family court's order, and we reject Carroll's arguments to the contrary.

B. *The Family Court Did Not Abuse its Discretion in Ordering the Transfer of One–Half of Carroll's Interest in the HACS Stock.*

In his supplemental brief, Carroll focuses on the fact that, "without even a finding of indebtedness by [Carroll] to [ex-wife], the family court awarded [Carroll's] property of an indeterminate value to [ex-wife]." As a factual matter, Carroll is incorrect. As previously stated, the family court held hearings following the Bankruptcy Court's September 25, 1996 ruling and, on February 4, 1997, entered an order stating in part:

> 9. *A judgment in the amount of $12,-420.00 was entered on May 9, 1996 against [Carroll] and in favor of [ex-wife] on account of arrearages in [Carroll's] obligation to pay monthly child support and monthly life insurance premiums accrued through February 5, 1996.* [Carroll's] request to amend said judgment is denied.
>
> 10. *[Carroll] is in further arrears in his obligation to pay monthly child support and monthly life insurance premiums in the period from February 6, 1996 through December 26, 1996 in the amount of $14,895.98 . . . .* Judgment in said amount, plus statutory interest thereon at ten percent (10%) per annum accruing from December 26, 1996, shall, and does hereby, enter against [Carroll].
>
> . . . .
>
> 22. *[Ex-wife's] request for alimony and other orders against [Carroll] to compensate [ex-wife] on account of the property and benefits which [ex-wife] has lost as a consequence of [Carroll's] failure to comply with his obligations under the [AICD],*

*as incorporated in the [Divorce] Decree, and [Carroll's] bankruptcy, and the damages [ex-wife] has suffered as a result thereof, shall be, and is hereby, granted.*

(Emphases added.)

Thus, Carroll is incorrect when he states that there was *no* "finding of indebtedness." While it is true that the *full extent* of Carroll's indebtedness to ex-wife has yet to be finally and conclusively determined, the family court did enter orders establishing that Carroll was in arrears in several of his obligations under the Divorce Decree and that ex-wife had suffered damages as a result of Carroll's arrearages and his bankruptcy. Indeed, as the ICA noted, there were both "liquidated and unliquidated amounts of money [Carroll] owed to [ex-wife]." *Carroll,* mem. op. at 15.

■ The question, therefore, is whether the family court exceeded its authority by transferring the one-half interest in HACS to ex-wife *prior* to determining the full extent of ex-wife's damages or the value of the HACS stock. The ICA affirmed the family court's stock transfer order, in part, on the basis that

> [t]he Divorce Decree incorporated the agreement of [Carroll] and [ex-wife] that[,] if [Carroll] filed for bankruptcy[,] [ex-wife] had the option of protecting her right to property payments and benefits from [Carroll] under that Divorce Decree from that bankruptcy by characterizing those property payments and benefits as alimony.

*Carroll,* mem. op. at 18. Thus, according to the ICA, the family court was merely enforcing an agreement of the parties.

By contrast, Carroll contends that, assuming ex-wife elected to characterize the payments as alimony, "the family court improperly failed to consider the factors listed in HRS § 580–47(a) (1993)." This argument fails, however, because, as the ICA pointed out, Carroll's contention "seeks reconsideration of the family court's final and unappealed February 4, 1997 Order and February 12, 1997 Order for a reason not authorized by HFCR Rule 60(b)." *Carroll,* mem. op. at 18. Having *failed to appeal* the initial February 4 and 12 Orders recognizing ex-wife's alimo-

ny election under the Divorce Decree, HFCR Rule 60(b) does not provide a basis for Carroll to now challenge those orders.

Moreover, Paragraph 10 of the AICD, which was merged into the Divorce Decree, specifically provided that ex-wife could elect payments from Carroll in any "form, including alimony." Having failed to appeal ex-wife's earlier election under that agreement, Carroll cannot now complain that the family court lacked authority, under HRS § 580–47 or the AICD, to enforce the terms of the Divorce Decree.

Finally, as ex-wife points out in her supplemental brief, insofar as (1) the family court has already held hearings to determine the extent of her damages, and (2) the family court will be required on remand to determine the nature and extent of Carroll's interest in HACS pursuant to the ICA's memorandum opinion, no further action is required by this court. Thus, as a practical matter, even *assuming* this court determined that the family court exceeded its authority by *prematurely* ordering the transfer of half of Carroll's interest in HACS to ex-wife, the ultimate result would not change. This court would simply remand for a determination of the actual extent of ex-wife's damages—a process that is already underway—and order the family court to assess the value of the HACS stock to determine whether the family court gave too much, too little, or the correct amount to ex-wife.

As previously stated, "the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." *Doe,* 84 Hawai'i at 46, 928 P.2d at 888 (internal quotation marks and citations omitted). Because the family court did *not* abuse its discretion in ordering Carroll to transfer half of his interest in HACS to ex-wife, we reject Carroll's arguments to the contrary.

### C. *The ICA's Remand Order Should Stand.*

In addition to upholding the family court's order transferring the one-half interest in HACS, the ICA also addressed the following two contentions by Carroll: (1) "that the HACS stock is encumbered and unavailable

for transfer[,]" *Carroll,* mem. op. at 19; and (2) that "his Japanese business associates have indicated to him that HACS would lose [a] lucrative contract if [ex-wife] became the owner of one-half of [Carroll's] interest in HACS." *Id.* at 20.

With respect to each contention, the ICA noted that "[t]he record does not reveal why the family court's September 10, 1997 Order did not discuss" the allegations. *See id.* at 19. The ICA, therefore, *assumed* for the sake of argument that the allegations were true and stated that they "may or may not be a valid HFCR Rule 60(b) ground for relief depending on the relevant facts." *Id.* Accordingly, the ICA issued the following remand order:

> [W]e remand for the family court's express consideration of [Carroll's] allegations that (a) "[o]ne of the loan provisions bars the HACS stock from being encumbered" and (b) HACS would lose its lucrative contract if [ex-wife] became the owner of one-half of [Carroll's] interest in HACS.

*Id.* at 24–25 (some brackets in original). Insofar as the ICA's remand order and holding will require the family court to answer questions bearing on the value of the HACS stock and determine whether or not valid HFCR Rule 60(b) grounds exist for relief, this court need not vacate and remand for a determination of those questions.[4]

### IV. CONCLUSION

For the foregoing reasons, we affirm the decision of the ICA.

---

4. Carroll notes in his application for certiorari that, *assuming* the ICA's initial decision affirming the award of HACS stock to ex-wife is correct, he "does not dispute that further hearings in the family court would be necessary regarding the transferability of HACS stock and whether HACS would lose [a valuable] contract ... if such transfer occurred." Thus, neither party challenges the need for the family court to inquire into these questions upon remand.