**GEORGE A. MAGOON**, Plaintiff–Appellant, v. **VELMA LEE MAGOON**, Defendant–Appellee

NOS. 13050 & 13312

(FC–D NO. 86–422 (Kona))

SEPTEMBER 7, 1989

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

606

OPINION OF THE COURT BY NAKAMURA, J.

George A. Magoon, II, the Personal Representative of George A. Magoon, deceased, appeals from the Findings of Fact, Conclusions of Law, [and] Order Dividing Property and the Order Denying Plaintiff's Motion for Relief entered by the Family Court of the Third Circuit in the divorce action brought by George A. Magoon against Velma Lee Magoon. The issues we are asked to resolve are:

1. Where the divorce decree reserves the matter of the final division of the parties' property for further hearing and decision and a party dies before the hearing, should the division be effected in accord with the divorce statute or in accord with the Probate Code and the dower statute?

2. Where the final division of the property is effected before the lapse of a year following entry of a divorce decree reserving the final division of property, do the provisions of HRS § 580–56(d) as interpreted by this court in *Boulton v. Boulton*, 69 Haw. 1, 730 P.2d 338 (1986), divest the family court of power to grant a party relief from the order dividing the property for fraud, misrepresentation, or other misconduct of the adverse party after the elapse of the foregoing one–year period?

We conclude the divorce statute governs the final division of the parties' property in the situation above and HRS § 580–56(d) does not divest the family court of jurisdiction to grant a party relief from the order effecting the division despite the elapse of a year.

I.

George A. Magoon and Velma Lee Magoon were first married on March 13, 1977 in Hot Springs, Arkansas. But Mr. Magoon's previous marriage was not finally dissolved until May 27, 1977, and the parties were married again on April 8, 1980 in Kona, Hawaii. The parties executed an antenuptial agreement on March 11, 1977, whereby each party

waived any and all rights or interests in and to the property owned or thereafter acquired by the other and any and all claims that could otherwise be made against the estate of the other, whether by way of dower, curtesy, or inheritance.

Mr. Magoon filed a complaint for divorce in the family court on August 12, 1986, and a decree of divorce was entered on March 4, 1987. The court, however, reserved issues related to spousal support, attorney's fees, and property division for further hearing and decision as authorized by HRS §§ 580–47 and –56. But Mr. Magoon died before the court was able to conduct a further hearing and determine the reserved issues, his death occurring on June 6, 1987. The family court then vacated the decree of divorce and dismissed the case on January 29, 1988 on the ground that his death abated the divorce action.

Mr. Magoon's Personal Representative, who had been substituted as the plaintiff in the action, immediately petitioned this court for a Writ of Mandamus directing the family court to reinstate the decree and proceed with the hearing to determine the property division issue. Finding the situation was one calling for intervention on our part, we issued an order directing the family court to rescind the dismissal of the case, reinstate the decree of divorce, conduct a hearing, and resolve the property division issue before the elapse of the one–year period following its reservation. The family court conducted a hearing, and on March 3, 1988 it ruled that Mrs. Magoon should be awarded a third of Mr. Magoon's real property and a third of his net estate.

The court entered its written Findings of Facts, Conclusions of Law, [and] Order Dividing Property, *nunc pro tunc*, on April 15, 1988. It found "Defendant did not abandon Plaintiff so as to defeat her claim to dower rights[,]" she "made a timely election of Elective Share and Dower Rights under the relevant provisions of the Hawaii Revised Statutes[,]" and "[t]here [was] insufficient evidence [to] prove Plaintiff's claim of the existence of an antinuptial [sic] agreement between Plaintiff and Defendant." Concluding "the rights of the parties [were] controlled by Chapter 560 and Chapter 533 of the Hawaii Revised Statutes[,]" the court awarded Mrs. Magoon "one–third of the Mahaiula land which was solely owned by [Mr. Magoon] on May 27, 1977[]" and "one–third of [his] net estate[.]" The finding that there was "insufficient evidence [of] the existence of an antinuptial [sic] agreement" was predicated upon the production by the substituted plaintiff of only an unsigned copy and the defendant's refusal

to acknowledge that the parties had executed an agreement, despite the plaintiff's testimony in the divorce hearing that they had.

After the substituted plaintiff filed a notice of appeal from the order entered on April 15, 1988, he discovered a photocopy of an executed and notarized agreement among the decedent's papers. The document was appended to an affidavit submitted by Mr. Magoon in support of a motion filed on Mrs. Magoon's behalf in a federal criminal case in which she was a defendant. Asserting the late discovery of the evidence and the commission of fraud by Mrs. Magoon furnished grounds for relief under Rule 60(b) of the Hawaii Family Court Rules (HFCR), the substituted plaintiff filed a motion in the family court to vacate the order awarding Mrs. Magoon "one–third of the Mahaiula land which was solely owned by [Mr. Magoon] on May 27, 1977[]" and "one–third of [his] net estate[.]" [1]

The family court voiced an opinion that "there [were] sufficient questions raised by the discovery of this document to have required or conducted a further fact finding hearing to determine the validity of the document." But it nevertheless concluded it had "lost jurisdiction and could not amend the division of property in any event." In its view, HRS § 580–56(d) and our ruling in *Boulton v. Boulton* [2] served to divest it of power to act on the matter because more than a year had elapsed since the decree of divorce was entered. The family court, however, intimated a ruling on the jurisdictional question should be secured from this court. A motion for remand was filed, but we chose not to decide the issue then in

---

[1] A rule 60(b) motion may be filed in the trial court during the pendency of an appeal. *Life of the Land v. Ariyoshi*, 57 Haw. 249, 252, 553 P.2d 464, 466 (1976). "If [the trial] court indicates that it will grant the motion, the appellant may then move in this court for a remand of the case." *Id.*

[2] *Boulton v. Boulton* was "an appeal from a dismissal of a divorce action by the family court, which ruled, pursuant to [HRS] § 580–56(d) (1976), that it was divested of jurisdiction to make a property division where the parties were granted their divorce more than a year ago." 69 Haw. at ____, 730 P.2d at 339. We "read the plain wording of the statute to be, '[f]ollowing . . . the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled . . . to any share of the former spouse's personal estate.'" 69 Haw. at ____, 730 P.2d at 339. We therefore agreed with the family court that HRS § 580–56(d) served to divest it of jurisdiction to make a final property division after the elapse of a year following the reservation of the issue in a divorce decree. 69 Haw. at ____, 730 P.2d at 339.

summary fashion. The family court, in the meantime, had issued a written order denying the Rule 60(b) motion, and we decided the issue should be given plenary consideration along with any other issue properly raised on appeal.

## II.

We begin our review of proceedings in the family court with a brief survey of the statutes implicated in its rulings and our decisions expounding said statutes.

## A.

"Every decree of divorce which does not specifically recite that the final division of the property of the parties is reserved for further hearing, decision, and orders shall finally divide the property of the parties to such action." HRS § 580–56(a). In effecting a division of the property the family court is governed by HRS § 580–47. Subsection (a) thereof empowers the court, "[u]pon granting a divorce, or thereafter if . . . jurisdiction of such matters is reserved under the decree . . . , [to] make such further orders as shall appear just and equitable . . . finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate[.]" Since the directive is to make such orders as shall appear just and equitable "each case must be decided upon its own facts and circumstances." *Carson v. Carson*, 50 Haw. 182, 183, 436 P.2d 7, 9 (1967). And the court's authority "includes . . . discretion to award separate property to the non–owning spouse." *Cassiday v. Cassiday*, 68 Haw. 383, 387, 716 P.2d 1133, 1136 (1986) (citations omitted).

But where the parties have entered into a premarital agreement[3] covering "[t]he rights and obligations of each of [them] in any . . . property of either or both of them whenever and wherever acquired or located[]" and "[t]he disposition of property upon separation, marital disso-

---

[3] HRS § 572D–1 defines "premarital agreement" as "an agreement between prospective spouses . . . and to be effective upon marriage." The agreement "becomes effective upon marriage of the parties to each other." HRS § 572D–4.

lution, death, or the occurrence or nonoccurrence of any other event[,]" the agreement rather than the court's view of what is just and equitable in the circumstances may govern the division of property. HRS § 572D–3(1) and (3). "A premarital agreement must be in writing and signed by both parties[;]" and "[i]t is enforceable without consideration." HRS § 572D–2. An executed "agreement is enforceable and . . . binding in any action unless the party against whom enforcement is sought proves that:

    (1)    That party did not execute the agreement voluntarily; or

    (2)    The agreement was unconscionable when it was executed and, before execution of the agreement, that party:

        (A)  Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

        (B)  Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

        (C)  Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party."

HRS § 572D–6(a). Whether the agreement was unconscionable or not is "decided by the court as a matter of law." HRS § 572D–6(c).

### B.

By virtue of HRS § 533–1, "[e]very woman shall be endowed of one–third part of all the lands which are not included in the net estate of her husband which is subject to her elective share and which were owned by her husband in fee simple, in freehold, or in leasehold at any time during marriage, and prior to July 1, 1977, unless she is lawfully barred thereof." Divorce, however, cuts off this right of a woman to claim on the death of her husband a one–third part of the lands that were owned by him during marriage. For "[i]n case of divorce dissolving the marriage contract, the wife shall not be endowed." HRS § 533–9.

"If a married person domiciled in this State dies, the surviving spouse has a right of election to take an elective share of one–third of the net estate under the limitations and conditions . . . stated [in the Probate Code]." HRS § 560:2–201. Of course, "[a] person who is divorced from the decedent . . . is not a surviving spouse[.]" HRS § 560:2–802.

But when the decree dissolving the marriage reserves the final division of the property of the parties for further hearing, decision, and orders, each party continues

> to have all of the rights to and interests in the property of the other party . . . as provided by [the dower and curtesy statute] and [the Probate Code], or as otherwise provided by law to the same extent he or she would have had such rights or interests if the decree of divorce had not been entered, until the entry of a decree or order finally dividing the property of the parties to such matrimonial action, or as provided in [HRS § 580–56(d)].

HRS § 580–56(b). Put simply, this subsection "reserves to a former spouse the rights to dower and curtesy [and to an elective share of the decedent's net estate] until the entry of a Decree which finally divides the property of the parties." House Stand. Comm. Rep. No. 618, in 1973 House Journal, at 1045. And the following subsection, HRS § 580–56(c), serves to prevent the attachment of intervening dower or curtesy rights in the event a party remarries before the property division is effected; it bars the right of dower or curtesy "to a subsequently acquired spouse until the property of the parties [to the pending action] has been finally divided[.]" *Id.*

HRS § 580–56(d), however, mandates that the division be accomplished within a year following the dissolution of marriage; the subsection reads:

> Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.

In *Boulton v. Boulton*, we interpreted the foregoing "one–year limitation [as applying] to all entitlements to the former spouse's personal estate,"

69 Haw. at ____, 730 P.2d at 340, and we concluded the passage of a year following the entry of a decree or order reserving the final division of property "divested the family court of jurisdiction" to divide the property of the parties. 69 Haw. at ____, 730 P.2d at 340; *see also supra* note 2.

### III.

In the case at bar, the family court conducted a hearing pursuant to our direction within the one–year period following the dissolution of the marriage of George A. Magoon and Velma Lee Magoon and concluded:

1. The plain language and legislative history of Section 580–56(b) clearly show that in a situation such as this one where a decree of divorce is entered reserving the issue of property division and where one party dies before the trial on the division of property, that the rights of the parties are controlled by Chapter 560 and Chapter 533 of the Hawaii Revised Statues [sic] and not by Section 580–47 of the Hawaii Revised Statutes[;] and

2. Defendant presented timely notice of her decision to take her dower rights and her elective share rights and is thereby entitled to one third of all land owned by Plaintiff at the date of marriage prior to July 1, 1977 that is not in the net estate of the Plaintiff under Chapter 533 of the Hawaii Reivsed [sic] Statutes and to one third of the net estate of Plaintiff.

The principal vice of this ruling lies in the court's failure to recognize that the section of the divorce statute empowering it to finally divide and distribute "the estate of the parties, real, personal, or mixed, whether community, joint, or separate[,]" is section 580–47(a), and not section 580–56(b). "'There is,' we have said in applying the [divorce] statute, 'no fixed rule for determining the amount of property to be awarded each spouse in a divorce action other than as set forth in HRS § 580–47.' *Au–Hoy v. Au–Hoy*, 60 Haw. 354, 357, 590 P.2d 80, 82 (1979)." *Myers v. Myers*, 70 Haw. 143, 148, 764 P.2d 1237, 1241 (1988). And what is set forth there is discretion to do what is "just and equitable" in the circumstances. *Cassiday v. Cassiday*, 68 Haw. 383, 388, 716 P.2d 1133, 1137 (1986) (citing *Au–Hoy v. Au–Hoy, supra*).

The plain language and legislative history of HRS § 580–56(b), contrary to the family court's conclusion, indicate it was enacted primarily to

prevent the attachment of "intervening rights of a new spouse" to the property of divorced persons in the hiatus between the dissolution of their marriage and the final division of their property. Stand. Comm. Rep. No. 618, *supra*, at 1045. As we noted, HRS § 580–56(b) "reserves to a former spouse the rights to dower and curtesy presently granted by Hawaii Revised Statutes until the entry of a Decree which finally divides the property of the parties to the former marriage[,]" HRS § 580–56(c) "bars the rights of dower and curtesy to a subsequently acquired spouse until the property of the parties of [the] prior marriage has been finally divided," Stand. Comm. Rep. No. 618, *supra*, at 1045, and HRS § 580–56(d) compels an expeditious determination of issues related to the division of property when the divorce decree reserves that matter for further hearing and decision. HRS § 580–56(b), (c), and (d); *Boulton v. Boulton*, 69 Haw. at ____, 730 P.2d at 340.

The language of HRS § 580–56(b) does not even intimate HRS chapters 560 and 533, rather than HRS § 580–47, control the division of the property of divorced parties in the event one dies in the interim between their divorce and the division of their property. Nor is there a suggestion in the Probate Code or the dower and curtesy statute that either is controlling in the foregoing situation. For a person "who is divorced from the decedent . . . is not [his] surviving spouse[,]" HRS § 560:2–802, and "[i]n case of divorce dissolving the marriage contract, the wife shall not be endowed." HRS § 533–9. Thus, the family court erred in concluding the division of property in the case at bar is "controlled by Chapter 560 and Chapter 533 of the Hawaii Revised Statues [sic] and not by Section 580–47."

## IV.

When the substituted plaintiff sought relief from the erroneous ruling under HFCR 60(b), the family court denied his motion because it "could not amend the division of property in any event." The court rested the decision not to act on our holding in *Boulton v. Boulton* that by reason of HRS § 580–56(d) the elapse of a year following the entry of a decree or order reserving the final division of property "divested the family court of jurisdiction." 69 Haw. at ____, 730 P.2d at 340.

True, the division of property following a divorce must be accomplished in a year, and the substituted plaintiff was attempting to invoke the

family court's authority to engage in property division after the elapse of a year. Were we to apply *Boulton v. Boulton* literally, we would have to affirm the family court. But we would then be ignoring the fact that the property division was accomplished within a year, albeit erroneously, and agreeing that the court was powerless to reconsider its decision in the face of allegations in the substituted plaintiff's motion of fraud, misrepresentation, or other misconduct of the defendant because a year had elapsed.

Our concern that a judgment or final order should reflect the true merits of the case, which is expressed in HFCR 60(a) and (b), militates against a literal application of the one–year limitation here.[4] So does the principle that a court has "inherent power . . . to investigate whether a judgment was obtained by fraud[.]" *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946) (citing *Hazel–Atlas Co. v. Hartford- Empire Co.*, 322 U.S. 238 (1944)). The court's power in this regard is inherent because it "is necessarily implicit in the proper and orderly administration of justice." *State v. Martin*, 56 Haw. 292, 294, 535 P.2d 127, 128 (1975).

We cannot conclude the legislature intended to divest our courts of power to do what the proper and orderly administration of justice demands by adopting the one–year limitation period in the absence of an

---

[4] "The problem of whether and in what instances relief should be granted from a judgment has always been a perplexing one, for it involves a clash of two most salutary principles—that litigation must terminate within a reasonable time, and that justice should be recorded in any particular case." Note, *History and Interpretation of Federal Rule 60(b) of the Federal Rules of Civil Procedure*, 25 Temp. L.Q. 77, 77–78 (1951) (footnote omitted).

HFCR 60(b)(3), like its precursors, Rule 60(b)(3) of the Federal Rules of Civil Procedure and Rule 60(b)(3) of the Hawaii Rules of Civil Procedure, codifies a well–recognized exception to the finality principle; it has been "formulated to permit relief in [several of the] situations in which the desire for truth is deemed to outweigh the value of finality." Note, *Relief from Federal Judgments: A Morass Unrelieved by a Rule*, 30 Hastings L.J. 41, 43 (1978). It vests the court with discretion to "relieve a party or his legal representative from any or all of the provisions of a final decree, order, or proceeding for . . . fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]" HFCR 60(b)(3). Relief, however, must be sought within a reasonable time, but not more than one year, after the entry of the decree or order.

express declaration to that effect. *Cf. State v. Brown*, 1 Haw. App. 602, 602, 623 P.2d 892, 892 (1981) ("The legislature, in the enactment of a statute, will not be presumed to intend to overturn [a court's] inherent powers, unless such intention is made clearly to appear by express declarations or by necessary implication."). The respect due one branch of government from a coordinate branch militates against such a conclusion. Thus, we conclude the family court retained jurisdiction to entertain a Rule 60(b) motion seeking relief from the order dividing the property despite the elapse of a year.

The Findings of Fact, Conclusions of Law, [and] Order Dividing Property and the Order Denying Plaintiff's Motion for Relief are vacated, and the case is remanded to the family court with instructions to:

1. conduct a hearing to determine the validity and enforceability of the premarital agreement;

2. divide the property of the parties in accord with the agreement if it is valid and enforceable; and

3. if the agreement is not valid and enforceable, effect a property division that is just and equitable in the circumstances.

*Thomas L. Stirling, Jr.* (*Laurie A. Loomis* with him on the briefs; Stirling & Kleintop and Foley, Maehara, Judge & Nip, of counsel) for appellant.

*Mary B. Johnston*, Johnston & Day, of counsel (*Boyce R. Brown, Jr.* and *Brian R. Jenkins* with her on the brief) for appellee.