Concurring and Dissenting Opinion by
ACOBA, J.,
with whom McKENNA, J., Joins.
I would hold that (1) Hawai'i Revised Statutes (HRS) § 580-47 plainly and unambiguously vests family courts with the discretion to equitably “divid[e] and distribute] the estate of the parties, real, personal, or mixed, whether community, joint, or separate [,] ” in divorce proceedings (emphases added); (2) in addition to the plain language of HRS § 580-47, its legislative history and the controlling ease law in this jurisdiction confirm that the discretion afforded family courts under HRS § 580-47 encompasses the authority to “award separate property to the non-owning spouse[,]” Cassiday v. Cassiday, 68 Haw. 383, 386, 716 P.2d 1133, 1136 (1986); (3) the family court of the fifth circuit (the court) erred in apparently concluding that upon dissolution of the marriage of Petitioner/Defendant-Appellant Aaron Kakinami (Aaron) and Respondent/Plaintiff-Appellee Bonnie Kaki-nami (Bonnie), it did not have the discretion to award separate property of Bonnie to Aaron or alternatively, to consider whether in dividing the marital estate between the parties, Bonnie’s separate property totaling over $800,000 could be taken into consideration.
Thus, I respectfully disagree with the majority’s determination that the court correctly coneluded that it could not award the separate property of Bonnie to Aaron, the non-owner spouse, under Hussey v. Hussey, 77 Hawai'i 202, 207, 881 P.2d 1270, 1275 (App. 1994), overruled on other grounds by State v. Gonsales, 91 Hawai'i 446, 984 P.2d 1272 (App.1999), see majority opinion at 708-11, and with its alternative conclusion that the court did not abuse its discretion in failing to consider whether Aaron was entitled to more than half of the marital property, see id. at 711-12.[1]
I.
Aaron and Bonnie were married on June 14, 1980. At the time of the parties’ marriage, Aaron was working as an attorney and Bonnie was working, as an escrow officer. Bonnie stated that she “was aware that [Aaron] made more money then [she did].” Bonnie began working as a school teacher in 1987.
In 1992, Bonnie received a $10,000 gift from her stepmother. Bonnie opened a new account at Owens Mortgage Investment (Owens account) that was funded with the $10,000. That same year, she also received a $50,000 inheritance from her aunt’s estate that was placed in the Owens account. Between 1992 and 1995, the Owens account was held in both Bonnie and Aaron’s names.
In 1995, the parties made a joint decision to place the Owens account’s solely in Bonnie’s name. Bonnie was not sure whether that decision was a result of a lawsuit that had been filed against Aaron or whether it was because “things were happening in his law practice that were of concern.” According to Bonnie, she and Aaron remained “happily married” throughout the mid-nineties. Aaron testified that during this time, he contributed to the marital partnership, *146 including by paying for his sons’ private school education.
In 2001, Aaron began having “a major health issue[,]” and was voluntarily hospitalized that year as a result of suicidal ideation. At the time of trial, Aaron stated that he had been diagnosed with “severe depression recurrent” and was taking medication. In 2002, Aaron’s law practice started to decline as a result of his illness and the economy “going down” after September 11, 2001. Aaron indicated that after treatment, he “went into remission” and accepted a position with the prosecutor’s office in 2002.
Bonnie inherited several sums of money from her step-mother in 2002, receiving disbursements in the amounts of $33,334, $308,000, $500,000, and $3,333. These monies were placed in either the Owens account or a Smith Barney account. Neither Bonnie nor Aaron contributed any money to the accounts after Bonnie received it.
Bonnie stated that a third-party managed the Owens and Smith Barney accounts. According to Bonnie, these accounts were kept separate from Aaron’s account and from marital accounts because she “wanted to have complete control over them and [she] did not want to make a gift of them at any point in time.” Bonnie believed Aaron knew these accounts were to remain separate because he would refer to them when speaking to Bonnie as “your inheritance[.]” Bonnie related that some money from these accounts was used to pay for her master’s degree in education, a roof (at a cost of about $10,000) for the marital residence, and other household expenses.
Notwithstanding Bonnie’s prior assertion regarding wanting to keep her inheritance money separate, when Bonnie was asked on cross-examination whether in 2002, she intended to use the inheritance money “in the marriage and to benefit the marriage partnership” she answered in the affirmative. Bonnie was able to maximize her contributions to her retirement fund after receiving her inheritances. Aaron testified that Bonnie never expressed to him that she intended her inheritance money to be her sole, separate property or that it was not to be used for marital purposes. He also indicated that contrary to Bonnie’s testimony, he believed the Owens accounts were funded by gifts from both of their relatives, including gifts from his parents. In addition, Aaron stated that after Bonnie had used some of the money from the Owens accounts, she “use[d] marital funds to reimburse what she took out.”
Aaron testified that throughout his marriage and through 2005, he provided for the marital partnership. In 2005, while at the prosecutor’s office, Aaron went on unemployment to give him time to “recover” from his illness, resulting in a decrease in his income once again. In 2005, Petitioner left the prosecutor’s office and reopened his private practice. That year, Bonnie consulted with a divorce attorney. Bonnie filed for divorce on March 9, 2006. At the time of trial, Aaron still maintained his practice.
II.
In this case, the court concluded that Bonnie had met her burden of establishing that the said inheritances were Marital Separate Property under the test set forth Hussey. Conclusion 7 (citing Hussey, 77 Hawai'i at 207, 881 P.2d at 1275). Additionally, the court decided that “Marital Separate Property” amounting to some $800,000 “is awarded 100% to the owner-spouse and 0% to the non-owner spouse.” Conclusion 10. In his Application, Aaron argues that the court erred in concluding that Marital Separate Property or appreciation on such property can never be awarded to the non-owning spouse.[2]
This court has adopted general partnership principles (Partnership Model), originating in the ICA, see Hashimoto v. Hashimoto, 6 Haw.App. 424, 426, 725 P.2d 520, 522 (App.1986), overruled on other grounds by Gussin v. Gussin, 73 Haw. 470, 836 P.2d 484 (1992), *147 in order to guide the family courts in the exercise of their discretion under HRS § 580-47. Cox v. Cox, 125 Hawai'i 19, 26, 250 P.3d 775, 782 (2011). Under partnership principles, “ ‘each partner is entitled to be repaid his [or her] contributions to the partnership property, whether made by way of capital or advances.’ “ Id. (quoting Tougas v. Tougas, 76 Hawai'i 19, 27, 868 P.2d 437, 445 (1994)). In dividing assets in divorce proceedings, the family court utilizes five categories of net market value (NMV).[3] Id. Generally, “ ‘assuming all valid and relevant considerations are equal, the Category 1 and 3 NMVs are the partner’s contributions to the Marital Partnership Property that are repaid to the contributing spouse’ and ‘the Category 2, 4, and 5 NMVs are Marital Partnership Property that is awarded one-half to each spouse.’ “ Id. (quoting Helbush v. Helbush, 108 Hawai'i 508, 513, 122 P.3d 288, 293 (App.2005)) (some internal quotation marks, brackets, and ellipsis omitted).
Subsequent to Tougas, 76 Hawai'i at 19, 868 P.2d at 445, the ICA reformulated the Partnership Model into the following three categories of property:
Premarital Separate Property. This was the property owned by each spouse immediately prior to their marriage or cohabitation that was concluded by their marriage. Upon marriage, this property became either Marital Separate Property or Marital Partnership Property.
Marital Separate Property. This is the following property owned by one or both of the spouses at the time of the divorce:
a. All property that was excluded from the marital partnership by an agreement in conformity with the Hawai'i Uniform Premarital Agreement Act (HUPAA), HRS chapter 572D (Supp.l992)[;[4]] ...
b. All property that was excluded from the marital partnership by a valid contract. Tougas, 76 Hawai'i at 24, 868 P.2d at 442; and
c. All property that (1) was acquired by the spouse-owner during the marriage by gift or inheritance, (2) was expressly classified by the donee/heir-spouse-owner as his or her separate property, and (3) after acquisition, was maintained by itself and/or sources other than one or both of the spouses and funded by sources other than marital partnership income or property.
Marital Partnership Property. All property that is not Marital Separate Property.
Hussey, 77 Hawai'i at 206-07, 881 P.2d at 1274-75 (emphases added). The third category (c) of marital separate property was apparently created without reference to statute, rule, or case law. Categories (a) and (b) *148 already existed by virtue of statute, irrespective of Hussey.
Hussey stated that “[although Marital Separate Property cannot be used by the family court to ‘offset,’ ... the award of Marital Partnership Property to the other spouse, it can be used by the family court to ‘alter the ultimate distribution of [the marital estate] based on the respective separate conditions of the spouses.’ “ Id. at 207, 881 P.2d at 1275 (quoting Tougas, 76 Hawai'i at 32, 868 P.2d at 450). However, according to Hussey, the foregoing meant that “Marital Separate Property is property that has been validly excluded from the marital partnership” and, thus, cannot be awarded to a non-owner spouse. Id. Hussey further concluded that, consequently, the five categories of NMV apply only to Marital Partnership Property, but not to Marital Separate Property. Id.
In Markham v. Markham, 80 Hawai'i 274, 279-280, 909 P.2d 602, 607-08 (App.1996), the family court awarded the husband his interest in “Maile, Inc” subject to an equalization payment to the wife based on the entire value of the stock. On appeal, the husband disputed the equalization award to the wife. Id. at 284, 909 P.2d at 612. Markham characterized the Maile stock as “property separately owned by one spouse on the date of marriage.” Id. at 286, 909 P.2d at 614 (quotation marks omitted). Markham noted that this court had already held that a family court has the discretion to award up to half of the during-marriage appreciation of property separately owned at the time of marriage which remains separately owned at the time of the divorce. Id. (citing Cassiday, 68 Haw. at 389, 716 P.2d at 1138). But, as Markham observed, the family court had awarded the wife an equalization payment “based on the value of the stock itself, rather than any appreciation of the stock over [the] relevant period of time.” Id. Thus, Markham considered whether the family court had the discretion to make such an award. See id.
Generally, Markham stated, “absent an agreement to the contrary, each partner is entitled to his or her separately owned property.” Id. Markham acknowledged that “[separately owned property may become marital property if the owner spouse ‘gifts’ the property to the other spouse or to the marital estate[,]” id. (quoting Tougas, 76 Hawai'i at 31, 868 P.2d at 437) (internal quotation marks omitted), but “it [wa]s undisputed that Husband’s stock was never gifted to Wife or made a part of the marital estate [,] id. (emphases added). According to Markham, “HRS § 580-47(a), however, vests the family court with broad discretion to divide and distribute the estate of the parties “whether community, joint or separate ’ in a ‘just and equitable’ manner.” Id. (emphasis in original). “This discretion^]” Markham concluded, “encompasses the authority to ‘award separate property to the non-owning spouse.’ “ Id. (quoting Cassiday, 68 Haw. at 387, 716 P.2d at 1136). Based on the foregoing, Markham determined that the court did not abuse its discretion in awarding the wife an equalization payment based on the value of the husband’s separately owned stock in Maile. See id.
In Schiller v. Schiller, 120 Hawai'i 283, 310, 205 P.3d 548, 575 (App.2009), the ICA considered whether the husband’s interest in a company called “Garnet,” which the ICA deemed to be “Marital Separate Property,” was subject to equitable distribution. The ICA discerned in light of Hussey and Markham, “a contradiction in the case law in this jurisdiction regarding whether a family court can award separate property to a non-owner spouse.” Id. Schiller noted Markham stated that HRS § 580-47(a) “ ‘vests the family court with broad discretion to divide and distribute the estate of the parties whether community, joint or separate in a just and equitable manner’ “ and that “ ‘[t]his discretion encompasses the authority to award separate property to the non-owning spouse.’ “ Id. (quoting Markham, 80 Hawai'i at 286, 909 P.2d at 614) (emphases in original). In contrast, Hussey stated “ ‘Marital Separate Property is property that has been validly excluded from the marital partnership ’ “ and “ ‘[although the family court may allow Marital Separate Property to reasonably influence the division and distribution of Marital Partnership Property, it cannot award any Marital Separate Property to the non-owner spouse.’ “ Id. at 310-11, 205 P.3d at 575-76 (emphases in original). Schiller viewed Hussey’s “paraphrasing of the hold- *149 mg in Tougas as inaeeurate[.] ...” Id. at 311, 205 P.3d at 576; see Tougas, 76 Hawai'i at 32, 868 P.2d at 450 (conelnding that “Wife’s partnership interests should [not] offset Husband’s interest in the marital estate” in light “of the spousal consent agreement, which operates as a waiver by Husband of all rights to the partnerships”).
In Tougas, the wife’s parents created a partnership with their children. 76 Hawai'i at 23, 868 P.2d at 441. The creation of the partnership was conditioned upon the understanding that the partnership was to benefit the children only, to the exclusion of their spouses or significant others. Id. The children, including the wife, and the husband, signed a “spousal consent” form acknowledging that their spouses were to have no interest in the proceeds of the partnership. Id. A second partnership was later formed, and although no “spousal consent” forms were signed, the partnership was intended to benefit the children. Id.
Shortly after the wife filed a complaint for divorce, the California Superior Court concluded in an action filed by the parents that the “spousal consent” agreement was a valid contract, and that the husband waived any interest in the partnership. Id. at 25, 868 P.2d at 443. The family court ordered that the California Superior Court’s judgment be given full faith and credit. Id. The family court considered the position the wife would be left in after divorce as a result of her separate property holdings, including the partnerships, in determining that the wife was entitled to only 25% of the post-marital value of the business owned by the husband and wife, known as PDI. Id.
On appeal, the wife argued that she was entitled to 50% of PDI’s post-marital value since she and the husband contributed equally to the business. Id. at 32, 868 P.2d at 450. This court noted that a family court has the discretion to consider the condition of the parties after the divorce, and that a party’s separate property holdings properly factor into such consideration. Id. Tougas clarified that this did not mean the wife’s partnership interests should “offset” the husband’s interest in the marital estate, because by virtue of the “spousal consent” agreement, the husband “waive[d] ... all rights to the partnerships^] ...” Id. Despite the consent agreement waiving his interest in the wife’s partnership interests, the family court could “alter alimony, child support and, as in [Tougasl the ultimate distribution of the marital estate based on the respective separate conditions of the spouses.” Id. (emphasis added).
Schiller pointed out that Tougas did not make a “blanket statement that the family court ‘cannot award any Marital Separate Property to the non-owner spouse’ in any ease,” as construed by Hussey. 120 Hawai'i at 312, 205 P.3d at 577. Instead, “this court narrowly held” that because the husband and wife “entered into a valid contract whereby [the husband] agreed to waive any rights to [the wife’s] interest in her parents’ partnerships, [the wife’s] partnership interests should not offset [the husband’s] interest in the marital estate.” Id. (emphasis added). Schiller decided that pursuant to Markham, “the family court may ‘award separate property to the non-owning spouse.’ “ Id. (quoting Markham, 80 Hawai'i at 286, 909 P.2d at 614).
III.
A.
A mere reading of Tougas indicates Schiller correctly read Tougas and Hussey did not. Hussey broadly stated that a family court may not award “Marital Separate Property” to the non-owner spouse. Hussey, 77 Hawai'i at 207, 881 P.2d at 1275. Tougas did not adopt such a broad rule and, instead, held under the facts that Wife’s partnership interests should not “offset” Husband’s interest in the marital estate because Husband waived all rights to Wife’s partnerships by signing the “spousal consent agreement[.]” 76 Hawai'i at 32, 868 P.2d at 450. Thus, Schiller correctly concluded that Tougas did not hold as a standard proposition that a family court does not have discretion to award separate property to a non-owning spouse. See 120 Hawai'i at 312, 205 P.3d at 577. This court has declared that HRS § 580-47 is the governing authority for distributing property. See Gussin, 73 Haw. at 479, 836 P.2d at 489 (stating that HRS § 580-47 is the only rule for determining the *150 amount of property to be awarded to each spouse). HRS § 580-47 plainly and unambiguously vests the family court with the jurisdiction to “divid[e] and distribute] the estate of the parties, ... whether community, joint, or separate.” Nothing in the language of HRS § 580-47 limits the family court’s discretion with respect to the equitable division of the separate property of the parties. In other words, the family court’s equitable discretion to award separate property is granted by the statute. “ ‘[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.’ “ State v. Kalama, 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000) (quoting Citizens for Protection of North Kohala Coastline v. County of Hawai'i, 91 Hawai'i 94, 107, 979 P.2d 1120, 1133 (1999)).
The legislative history of HRS § 58CM7 also confirms such power in the family court.[5] HRS § 580-47 was expressly intended to “confer upon the Judge who grants a final decree of divorce the power to make property settlements between the parties of all property, real, personal or mixed, whether held as community, joint or separate property.” S. Stand. Comm. Rep. No. 594, in 1955 Senate Journal, at 632 (emphases added).[6]
B.
In consonance with the legislative history and express language of HRS § 580-47, the case law in this jurisdiction firmly establishes that the family courts’ authority to divide and distribute property encompasses the power to award separate property to the non-owning spouse. In Takaki v. Takaki, 3 Haw.App. 189, 192, 647 P.2d 726, 728 (1982)), the husband argued that a family court abuses its discretion “when it awards separate property to the non-owning spouse” because “only property deemed ‘community property’ may be awarded to the non-owning spouse.” 3 Haw.App. at 192, 647 P.2d at 728. The ICA rejected that argument, noting that “Hawai'i is not a community property state[,]” and “[i]n a divorce ease in Hawai'i, property is divided pursuant to [HRS § ] 580-47[,]” id. at 192-93, 647 P.2d at 728, and to reiterate, HRS § 580-47 plainly vests the family court with the authority to divide and distribute the “separate” property of the parties.
Moreover, Takaki observed that, “[w]ith respect to ‘Disposition of Property,’ the Uniform Marriage and Divorce Act (UMDA) offers two versions.” 3 Haw.App. at 193 n. 4, 647 P.2d at 728 n. 4. Takaki explained that “Alternative B, which is for community property states, requires separate property to be awarded to its owner and specifies that the value of a party’s separate property may be considered when deciding how to divide marital property.” Id. (internal quotation marks omitted) (emphasis added). “Alternative A requires equitable apportionment of marital and separate property and thus authorizes the award of separate property to the non-owning party." Id. (internal quotation marks omitted; emphases added). Takaki explained that although Hawai'i has not adopted the UMDA, “HRS [§ ] 580-47 ... is similar to the UMDA’s Alternative A” Id.; see also Takara v. Takara, 4 Haw.App. 68, 71, 660 P.2d 529, 532 (1983); (“Clearly, the lower court had the power to distribute Husband’s separate property to Wife.”) (Citing HRS § 580-47.)
In Cassiday, Wife appealed from a divorce decree awarding her less property and spousal support than she had sought. 68 Haw. at 383-84, 716 P.2d at 1134. During the parties’ marriage, Husband had acquired several properties through gifts from his mother and inheritance. Id. at 385, 716 P.2d at 1135. Husband maintained that the trial *151 court did not abuse its discretion in awarding those properties exclusively to him since the “properties were acquired through family gifts or inheritance; were separately maintained with non-marital assets and without any contribution of time, effort or money from wife; and were still separately owned at the time of divorce[.]” Id. at 386, 716 P.2d at 1136.
This court disagreed, noting that HRS § 580-47 “vests in the trial court the discretion to divide all of the property of the parties, whether community, joint or separate according to what is ‘just and equitable.’ “ Id. Cassiday declared that “[t]h is includes the discretion to award separate property to the non-owning spouse.” Id. at 386-87, 716 P.2d at 1136 (citations omitted). According to Cassiday, the foregoing principle is “consistent with the time honored proposition that marriage is a partnership to which both partners bring their financial resources as well as their individual energies and efforts.” Id. at 387, 716 P.2d at 1136. The fact “[t]hat one partner brings to the marriage substantially greater assets than the other does not make this any less the case[,]” Cassiday stated. Id. Cassiday viewed “the source of the asset” as “one of the ‘circumstances of the case,’ as is a spouse’s positive or negative effect on the accumulation or preservation of the separate property of the spouse[,]” but cautioned that “undue emphasis on any particular factor is an abuse of discretion.” Id.
This court pointed out that the marriage of the parties was over thirty years, during which Husband was able to advance in his career, while Wife had no career and instead, performed the duties of an “officer’s wife,” including raising the parties’ two children. Id. at 386-87, 716 P.2d at 1137. According to Cassiday, it was Husband’s successful career that made it “unnecessary for him to deplete his own separate properties.” Id. at 388, 716 P.2d at 1137.
In light of the foregoing, this court held that “the trial court abused its discretion by placing undue emphasis on the source of the asset and on Wife’s lack of direct participation in the financing and maintenance of these assets.” Id. at 387, 716 P.2d at 1136-37. Specifically, Cassiday pointed out that “the trial court failed to take into account the extent to which the marriage in and of itself affected the accumulation or preservation of Husband’s separate properties.” Id. Cassiday held that “[t]o the extent that Wife contributed to the advancement of Husband’s military career and thus made it unnecessary for him to draw upon his own resources, the trial court abused its discretion by not allowing her to share in those assets she helped to preserve.” Id. at 388, 716 P.2d at 1137;[7] see also Carson v. Carson, 50 Haw. 182, 184, 436 P.2d 7, 9 (1967) (concluding that the trial court’s statements regarding the “ ‘bulk of the husband’s property [having been] acquired prior to marriage’ “ and the husband having “ ‘used his financial resources to purchase property in California indicate[d] that the trial court placed undue emphasis on the fact that it was separate property’ ”).
C.
Thus, our controlling case law, consistent with the plain language of HRS § 580-47 and its legislative history, clearly establishes that separate property may be awarded to the non-owning spouse. In this ease, Aaron supported the marital partnership until he became ill in 2001. After Bonnie’s received her inheritances, Aaron “went into remission” *152 and continued to support the marital partnership through 2005. Bonnie indicated that after receiving her inheritances, she was able to maximize her retirement contributions, suggesting that Aaron was continuing to support the marital partnership. Here, the court appears to have determined that separate property could not be considered in the distribution of property, and consequently, would have “failed to take into account the extent to which the marriage in and of itself affected the accumulation or preservation of [Bonnie’s] separate properties.” Cassiday, 68 Haw. at 387, 716 P.2d at 1137. To the extent Aaron’s contributions to the marital partnership “made it unnecessary for [Bonnie] to draw upon [her] own resources [to support the marital partnership,]” the court may have “abused its discretion by not allowing [Aaron] to share in those assets [he] helped to preserve.” Id. at 388, 716 P.2d at 1137.
IV.
The conclusion that the court has the discretion to award the separate property of one spouse to the non-owner spouse is also consistent with Gussin, 73 Haw. at 480, 836 P.2d at 489, which declared “[t]his court has ‘avoided, where possible, the adoption of general rules governing the division of marital assets,” because such rules “narrow the discretion of family court judges, and are thus repugnant to HRS § 580-47.” (Emphasis added.) In Gussin, this court struck down “uniform starting points” (USP) that had been developed by the ICA, which according to this court, bound “a judge to automatically presume specific percentage splits in the division of each category of property.” Id. at 481, 836 P.2d at 490. Gussin emphasized that “family court judges ‘should not be bound by a rule that automatically presumes a predetermined division of marital property.’ “ Id. (quoting Myers v. Myers, 70 Haw. 143, 154, 764 P.2d 1237, 1244 (1988)) (some quotation marks omitted).
Gussin held that USPs violated the mandate of HRS § 580-47 by “restrict[ing] the family courts’ discretion in the equitable division and distribution of parties’ estates.” Id. at 473, 836 P.2d at 486. To conclude that a family court lacks any authority to award the separate property of one spouse to the non-owning spouse, no matter what the circumstances, “narrow[s] the discretion of family court judges,” and such a holding would be “repugnant to HRS § 580-47.” Id. at 480, 836 P.2d at 489; see also Magoon v. Magoon, 70 Haw. 605, 611, 780 P.2d 80, 83 (1989) (stating that because HRS § 580-47 directs the family court “to make such orders as shall appear just and equitable each ease must be decided upon its own facts and eireumstances[,]” and “the court’s authority includes [the] discretion to award separate property to the non-owning spouse”) (internal quotation marks, citations, and ellipsis omitted).
In light of the foregoing, the court incorrectly concluded that Bonnie’s separate property must be awarded solely to Bonnie on the basis of Hussey. Barring family courts from considering awards of separate property, as authorized by HRS § 580-47, “restricts the family courts’ discretion in the equitable division and distribution of parties’ estates.” Gussin, 73 Haw. at 486, 836 P.2d at 492. Such a conclusion would “narrow the discretion of family court judges” in a manner plainly “repugnant to HRS § 580-47[,]” id. at 480, 836 P.2d at 489, its legislative history, and the controlling case law in this jurisdiction.
V.
A.
Contrarily, the majority concludes that the court correctly concluded that Marital Separate Property cannot be awarded to the non-owner spouse. See majority opinion at 709-11. First, the majority asserts that although Schiller held that a family court may award separate property to a non-owning spouse, Schiller “was premised on an incorrect analysis when it noted a conflict between Hussey and Markham.” Majority opinion at 709. According to the majority, because the Maile stock did not qualify as “Marital Separate Property” as defined in Hussey, the Maile stock was necessarily Marital Partnership Property subject to equitable division, and to which the Partnership Model applied. Id. at 710. The majority maintains that because Markham did not involve separate property *153 but marital partnership property, no “contradiction in the ease law” existed, as Schiller perceived, and Hussey’s view that separate property is not divisible “remains valid”. Id.
Respectfully, the majority’s interpretation of Markham is incorrect. In Markham, the ICA noted with respect to the Maile stock that “[separately owned property may become marital property if the owner spouse ‘gifts’ the property to the other spouse or to the marital estate.” 80 Hawai'i at 286, 909 P.2d at 614 (quoting Tougas, 76 Hawai'i at 31, 868 P.2d at 437) (internal quotation marks omitted). But, Markham said it was “undisputed that Husband’s stock was never gifted to Wife or made a part of the marital estate.” Id. (emphases added). Thus, in Markham, the Maile stock was the “separate” property of Husband. Markham stated HRS § 58(M7 vests the family court with the discretion to award such property, and HRS § 580-47(a) “encompasses the authority to ‘award separate property to the non-owning spouse.’ “ Id. (quoting Cassiday, 68 Haw. at 387, 716 P.2d at 1136). Thus, it would not be correct to suggest that Markham dealt with property that had become part of the marital estate.
The majority also states that Markham characterized the Husband’s Maile stock as Category 1 property, which under Hussey, is a type of Marital Partnership Property. Majority opinion at 709, 709 n. 8. The majority suggests that Markham involved property that had become part of the marital estate. However, this interpretation is wrong in light of Markham’s express statement that the Maile stock did not become part of the marital estate. Moreover, Markham did not adopt Hussey’s conclusion that the Partnership Model applies only to Marital Separate Property. Rather, as opposed to Hussey, Markham concluded that the Partnership Model applies to all property, including separate property. Markham did not cite to Hussey. Markham relied on this court’s decision in Cassiday in concluding the court had the authority to award separate property to the non-owner spouse inasmuch as the third category, (c), of Marital Separate Property created by Hussey cannot be reconciled with Cassiday or HRS § 580-47. See Markham, 80 Hawai'i at 286, 909 P.2d at 614. Also, Hussey, an ICA case, could not overrule Cassiday, and Tougas did not overrule Cassiday. Thus, Cassiday’s determination that separate property may be awarded to the non-owner spouse is controlling precedent.
Contrary to the majority’s holding, Schiller was not “premised on an incorrect analy-sisU” majority opinion at 709. While the majority maintains Markham and Hussey are not in conflict because those eases are factually distinguishable, those cases plainly conflict in principle inasmuch as Markham held HRS § 580-47, “encompasses the authority to award separate property to the non-owning spouse[,]” 80 Hawai'i at 277, 909 P.2d at 605, and Hussey concluded a family court “cannot award any Marital Separate Property to the non-owner spouse[,]” 77 Hawai'i at 207, 881 P.2d at 1275. Schiller was correct for the reasons discussed, and the ICA properly relied on Schiller in this case.
In any event, contradiction in the case law of the ICA notwithstanding, this court has unequivocally held that the family court has the authority to award separate property to the non-owner spouse. See e.g., Cassiday, 68 Haw. at 387, 716 P.2d at 1136. HRS § 580-47, which solely governs division and distribution of property upon divorce authorizes separate property to be equitably awarded to the non-owner spouse. Controlling case law in this jurisdiction has conformed to HRS § 580-47. Moreover, to the extent Hussey excluded certain separate property from the reach of HRS § 580-47 under the third category, (c), of Marital Separate Property,[8] by judicial fiat, Hussey conflicts with HRS § 580-47. In resolving such conflict, we have recently mandated that the statute must control. See Jaylo v. Jaylo, 125 Ha *154 wai‘i 369, 375, 262 P.3d 245, 251 (2011) (“To the extent that the 2004 [Family Court’s Amended Child Support] Guidelines purport to set an age limitation of 23 on the family court's authority to continue educational support for an adult child, they are invalid as they exceed the statutory mandate of HRS § 580-47(a)[.] .. .”).[9]
B.
Next, referring to Hussey, the majority states that “Marital Separate Property is propei’ty that has been excluded from the marital partnership, and thus, not subject to division.” Id. at 711. This includes, the majority maintains, property excluded from the marital estate by premarital agreement or valid contract, and gifts and certain inheritances obtained during the marriage that have been excluded from the marital estate in the manner set out in Hussey. Id.
The first two categories of property, referred to as “Marital Separate Propei’ty” by Hussey, merely reiterate statutory exclusions that would exist irrespective of Hussey. Chapter 572D of the HRS governs premarital agreements made between prospective spouses in contemplation of marriage, which become effective upon marriage. See HRS § 572D-1. In order to be enforceable, the premarital agreement must be in writing and signed by both parties. HRS § 572D-2. If enforceable, the “premarital agreement ... shall be binding.” HRS § 572D-6(a).[10] Thus, property encompassed by a valid and enforceable premarital agreement is governed by Chapter 572D of the HRS as opposed to HRS § 580-47. Similarly, HRS § 572-22 allows “a married person” to “make contracts, oral and written, sealed and unsealed, with her or his spouse[,]” and “[a]ll contracts made between spouses ... shall be valid.” Thus, like premarital agreements, property encompassed by contracts made between spouses during their marriage is governed by HRS § 572-22 as opposed to HRS § 580-47. Hence, propei’ty covered by a premarital contract or a contract entered between the spouses during the marriage is not governed by HRS § 580-47, and therefore, not subject to fair and equitable division thereunder.
Here, the said inheritances were received by Bonnie during the parties’ marriage. Thus, no premarital contract under Chapter 572 of the HRS governed Bonnie’s inheritances. Nor is there any evidence that pursuant to HRS § 572-22, Bonnie and Aaron made any contract regarding the inheritances during their marriage. See Magoon, 70 Haw. at 611-12, 780 P.2d at 83-84 (noting that although, ordinarily, the division of property upon divorce “is governed by HRS § 580-47[,]” but where the parties have entered into a premarital agreement governing the disposition of property upon separation or divorce, “the agreement rather than the court’s view of what is just and equitable in the circumstances may govern the division of property”).
The majority maintains that the said inheritances fall into the third category of “Marital Separate Property” set forth in Hussey. But, as noted, Hussey created this type of property, which includes certain marital gifts and inheritances, by judicial fiat, unsupported by statute or rule, and without any citation to governing authority. Moreover, Hussey’s conclusion that separate property may not be awarded clearly was an “inaccurate” “paraphrasing of the holding in Tougas *155 ....“ Schiller, 120 Hawai'i at 311, 205 P.3d at 576; see Tougas, 76 Hawai'i at 32, 868 P.2d at 450 (stating that “Wife’s partnership interests should [not] offset Husband’s interest in the marital estate” in light of “[t]he validation of the spousal consent agreement[;]” but under these circumstances, “the court may, nevertheless, alter alimony, child support and, as in this case, the ultimate distribution of the marital estate based on the respective separate conditions of the spouses”). In that vein, Hussey disregarded the controlling case law of this court. See Cassiday, 68 Haw. at 386-87, 716 P.2d at 1136 (declaring that HRS § 580-47 vests the family court with the “discretion to award separate property to the non-owning spouse”); Carson, 50 Haw. at 184, 436 P.2d at 9 (concluding that the trial court abused its discretion by “placing undue emphasis on the fact that it was separate property' ”). Hussey also ignored other ICA opinions such as Takaki
As noted before, the majority maintains Hussey made a distinction between “separate property” and “marital separate property”, forming a “narrow category” of separate property, majority opinion at 710 n. 9; see also id. at 710 n. 10 & 11; in effect, excluding the family court per se from “dividing] and distributing]” this type of “separate” property[,] HRS § 580-47. However, respectfully, as demonstrated supra, this exclusion is contrary to the inclusive treatment of separate property required by the plain language of HRS § 580-47, the legislative history therefor, and case law.
Hussey has no precedential value in this court. Rather, division of property “is governed by HRS § 580-47.” See Gussin, 73 Haw. at 478-79, 836 P.2d at 489 (stating that “ ‘there is no fixed rule for determining the amount of property to be awarded each spouse in a divorce action other than as set forth in HRS § 580-47’ “ (quoting Myers, 70 Haw. at 148-49, 764 P.2d at 1241) (internal citation omitted) (emphasis added).
Consequently, Hussey was wrong to impress a restriction on the statutory language granting the family court the power to divide and distribute separate property. See id. at 486, 836 P.2d at 492 (striking down USPs “because they restrict the family courts’ discretion in the equitable division and distribution of parties’ estates” under HRS § 580-47). The court erred in apparently concluding that it did not have the authority to consider whether Aaron should be awarded any part of Bonnie’s separate inheritances, or as discussed infra, to take into account Bonnie’s separate property in deciding whether Petitioner was entitled to more of the marital property.
VI.
The majority concludes that the court did not abuse its discretion by awarding Aaron one half of the marital estate. Majority opinion at 711-12. The majority concedes that the separate property of one spouse may alter the ultimate distribution of the marital estate. Id. at 712; see Tougas, 76 Hawai'i at 32, 868 P.2d at 450; see also id. (stating that “separate property holdings may properly factor into the court’s consideration”); Hussey, 77 Hawai'i at 207, 881 P.2d at 1275 (stating that “the family court may allow Marital Separate Property to reasonably influence the division and distribution of Marital Partnership Property”). According to the majority, however, the court did not abuse its discretion in failing to award Aaron more than half of the marital estate because Aaron did not argue to the court that Bonnie’s separate property should be a valid and relevant consideration to deviate from the partnership model. See id. at 711-12. Nevertheless, the majority considers the issue on the merits, and concludes that Aaron’s argument “lacks merit.” Id. at 711. The ICA also decided the issue, concluding that the court did not err in failing “to award Aaron more than one-half of the parties’ Marital Partnership Property.” Kakinami v. Kakinami, No. 29340, 2011 WL 1836718, at *2 (App.2011).
Family courts are mandated by HRS § 580-47 to divide and distribute the estate of the parties in a manner that is “just and equitable.” But “in making a property division, the [family c]ourt must consider all equitable factors and all other circumstances surrounding the marriage in arriving at a fair and equitable division.” Au-Hoy v. Au-Hoy, 60 Haw. 354, 358, 590 P.2d 80, 83 (1979). It is well established that a family court abuses its discretion where “(1) the family court *156 disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court’s decision clearly exceeds the bounds of reason.” Tougas, 76 Hawai'i at 26, 868 P.2d at 444 (emphasis added); accord Torres v. Torres, 100 Hawai'i 397, 428, 60 P.3d 798, 829 (2002); Carroll v. Nagatori-Carroll, 90 Hawai'i 376, 381, 978 P.2d 814, 819 (1999); Wong v. Wong, 87 Hawai'i 475, 486, 960 P.2d 145, 156 (App.1998); Bennett v. Bennett, 8 Haw.App. 415, 426, 807 P.2d 597, 603 (1991).
In this ease, it was the court’s obligation to exercise its equitable discretion. However, none of the court’s findings or conclusions indicate that the court considered whether Bonnie’s substantial separate property totaling over $800,000 might be a valid and relevant consideration justifying awarding Aaron more than fifty percent of the marital estate. Here, the court abused its discretion inasmuch is it appears to have believed it had no authority to award Bonnie’s separate property or to take separate property into account in arriving at an equitable distribution. See Tougas, 76 Hawai'i at 32, 868 P.2d at 450 (concluding that where one party may be left in a substantially better position as a result of his or her separate property holdings, the court may “alter ... the ultimate distribution of the marital estate based on the respective separate conditions of the spouses”). The court disregarded the law, which plainly allows for such considerations. Respectfully, because the court mistakenly believed it could not award separate property, it appears that the court abused its discretion because it failed to exercise its discretion one way or the other. Tougas, 76 Hawai'i at 26, 868 P.2d at 444.
VII.
For the reasons discussed supra, I respectfully dissent. I would affirm the opinion of the ICA insofar as it concluded that the family court’s “wide discretion to divide and distribute the estate of the parties in a just and equitable manner ... includes the authority to award Marital Separate Property to a non-owning spouse.” Kakinami, 2011 WL 1836718, at *2. However, the ICA ultimately affirmed the court’s October 7, 2008 Supplemental Divorce Decree, reasoning that the court did not abuse its discretion “by failing to [award any of Bonnie’s separate property to Aaron] in this case.” Id. Respectfully, contrary to the ICA’s conclusion, it appears the court was under the mistaken belief that it lacked the authority to award any of Bonnie’s separate property to Aaron. In addition, the court appears to have failed to exercise any discretion with respect to whether Aaron’s award should be increased in light of the respective resulting positions of the parties and the substantial amount of Bonnie’s separate property. For these reasons the court abused its discretion, and the remedy should be vacation of the judgment and remand of the ease.
Thus, I would vacate the judgment of the ICA and remand for consideration as. to whether Aaron is entitled to an award of any part of Bonnie’s inheritances, or alternatively, for the court to consider whether Aaron is entitled to more than half of the marital estate in light of the award to Bonnie of more than $800,000 in separate property.

. The majority maintains that the record appears to support Bonnie’s contention that Aaron waived the argument that he should be awarded Bonnie's separate property because he did not make that argument before the court and instead raised it for the first time on appeal. See majority opinion at 709-10. However, the majority addresses the argument to resolve inconsistencies in ICA opinions regarding the issue of whether family courts have the discretion to award separate property to the non-owner spouse. Id.

. The five categories are as follows:
Category 1. The NMV, plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DO-COEPOT [date of the conclusion of the eviden-tiary part of the trial].
Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.
Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.
Cox, 125 Hawai'i at 26, 250 P.3d at 782-83 (quoting Tougas, 76 Hawai'i at 27, 868 P.2d at 445).

. Hussey noted that HUPAA states in relevant part:
" § 572D-3 Content, (a) Parties to a premarital agreement may contract with respect to:
(1) The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;
(2) The right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property;
(3) The disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event [.]
77 Hawai'i at 207, 881 P.2d at 1275.

. The majority asserts that excluding Marital Separate Property from the property that the family court may divide and distribute is not inconsistent with HRS § 580-47 or its legislative history. See majority opinion 710 n. 11. Moreover, the majority states that Marital Separate Property is only a "narrow category” of separate property. Id. at 710 n. 9. With all due respect, both HRS § 580-47 and its legislative history vest the family court with the discretion to divide and distribute "all [separate] property,” and does not single out any type of separate property for different treatment. This, then, plainly conflicts with HRS § 580-47 and its legislative history-

. The majority suggests that its opinion is not inconsistent with Cassiday, because the family court may still award some separate property, but just not Marital Separate Property. Majority opinion at 710-11. But, as discussed, in Cassiday, Husband made the very argument Bonnie makes in this case, i.e., that his properties "acquired through family gifts or inheritance; were separately maintained with non-marital assets and without any contribution of time, effort or money from wife; and were still separately owned at the time of divorce[.]” Cassiday, 68 Haw. at 386, 716 P.2d at 1136. This court rejected Husband’s argument, noting that the family court has the discretion to divide all separate property of the parties, including the discretion to award Husband’s said separate property to the non-owning spouse. Id. at 386-87, 716 P.2d at 1136. Respectfully, the majority’s holding in this case is not consistent with Cassiday, although the majority cites to Cassiday in asserting the family court may still award some separate property, like "a gift or inheritance during the marriage ... not expressly classified] ... as separate property” or if "marital assets or efforts [were used] to maintains that gift or inheri-tancef,].” Majority opinion at 710.

. To reiterate, the third category of Marital Separate Property created by Hussey is property (1) acquired by the spouse-owner during the marriage by gift or inheritance, (2) expressly classified by the donee/heir-spouse-owner as his or her separate property, and (3) after acquisition, was maintained by itself and/or sources other than one or both of the spouses and funded by sources other than marital partnership income or property.” Hussey, 77 Hawai'i at 206-07, 881 P.2d at 1274-75.

. Although the majority maintains its holding is consistent with HRS § 580-47, to reiterate, HRS § 580-47 does not exclude any type of separate property from the discretion of the family court. To the extent the majority carves out a form of separate property from the family courts’ discretion, its holding is inconsistent with the plain language of HRS § 580-47 and its legislative history.

. HRS § 572D-6 states that the agreement is enforceable and binding unless the party against whom enforcement is sought proves that:
(1) That party did not execute the agreement voluntarily; or
(2) The agreement was unconscionable when it was executed and, before execution of the agreement, that party:
(A) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
(B) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and
(C) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.